**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2906
_____

UNITED STATES OF AMERICA

v.

MALACHI M. GLASS,
                                        Appellant


_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 1-13-cr-00231-001)
District Judge: Honorable John E. Jones, III
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
August 17, 2018
_____

Before:  VANASKIE, KRAUSE, and RESTREPO, *Circuit Judges*

(Opinion Filed: August 22, 2018)
_____

Edward J. Rymsza, III
Miele & Rymsza
125 East Third Street
Williamsport, PA 17701
        *Counsel for Appellant*

David J. Freed
Daryl F. Bloom
Stephen R. Cerutti
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____


VANASKIE, *Circuit Judge.*

Appellant Malachi Glass appeals his criminal sentence, in particular the District Court's application of a career-offender enhancement under the United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1. We will affirm.

I.

Glass pleaded guilty to one count of possession with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1). At Glass's sentencing hearing, the District Court applied a career-offender enhancement pursuant to

U.S.S.G. § 4B1.1. The enhancement was based on two prior state convictions under 35 Pa. Cons. Stat. § 780-113(a)(30)—one from 2001, CP-22-CR-2630-2001; and one from 2004, CP-31-CR-460-2004. Despite the enhancement, the District Court applied a downward variance. The District Court based the variance primarily on the observation that the pre-sentence investigation report ("PSR") overstated the seriousness of Glass's criminal past. The District Court also justified varying downward by citing Glass's significant family responsibilities, his drug addiction, and his relatively young age. The District Court ultimately imposed a prison term of 132 months.

Glass filed a timely notice of appeal, challenging the career-offender enhancement. We appointed appellate counsel. In July 2017, this Court denied appointed counsel's motion to withdraw under *Anders v. California*, 386 U.S. 738 (1967), recognizing that Glass had raised two non-frivolous arguments concerning the use of his state court convictions as predicates for a sentencing enhancement under the Sentencing Guidelines' career criminal provisions.[1] The Court then appointed new appellate counsel and ordered the parties to brief the merits of the appeal. We address the merits of Glass's appeal below.

II.

---

[1] Under *Anders*, "if counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." 386 U.S. at 744.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

The parties dispute which standard of review should govern our analysis. Glass argues he preserved his challenge to the career-offender enhancement, which would trigger *de novo* review. Alternatively, he claims he did not waive his challenge and, at the very least, plain error review should apply. On the other hand, the government contends that Glass either waived or forfeited his challenge, permitting us to disregard his argument or review it for plain error, respectively.

While it is true that Glass made several arguments regarding his criminal history to the District Court, Glass failed to challenge the inclusion of his convictions as predicate offenses for career-offender purposes prior to appeal. Even Glass's first appellate counsel acknowledged that trial counsel had conceded the issue and thus, plain error review should apply. In light of Glass's trial counsel's repeated concessions that Glass was a career offender, we think it appropriate to review the imposition of the career-offender enhancement for plain error. *See United States v. Dahl*, 833 F.3d 345, 357 (3d Cir. 2016) (applying plain error review "because Dahl did not object to the application of [a sentencing enhancement] on the grounds he asserts here").

"To demonstrate 'plain error' an appellant bears the burden of proving that: (1) the court erred; (2) the error was 'plain' at the time of appellate consideration; and (3) the error affected substantial rights, usually meaning that the error 'must have affected the outcome of the district court proceedings.'" *Gov't of the Virgin Islands v. Rosa*, 399 F.3d 283, 293 (3d Cir.

4

2005) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

III.

As relevant here, a defendant qualifies for a career-offender enhancement under the Guidelines if he or she "has at least two prior felony convictions of . . . a controlled substance offense." U.S.S.G. § 4B1.1(a). A "controlled substance offense" is an offense that (1) is punishable by a term of imprisonment that exceeds one year and (2) "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b). A state conviction cannot qualify as a "controlled substance offense" if its elements are broader than those listed in § 4B1.2(b). *See Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016) (holding, in the Armed Career Criminal Act ("ACCA") context, that "a state crime cannot qualify as . . . [a] predicate if its elements are broader than those of a listed generic offense"); *see also United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016) (applying *Mathis* to analysis of § 4B1.1).[2]

Glass's career-offender enhancement was based on two convictions under 35 Pa. Cons. Stat. § 780-113(a)(30). Glass argues that a violation of § 780-113(a)(30) is broader than the Guidelines' definition of a "controlled substance offense" to

---

[2] The parties agree that, with some exceptions not relevant here, cases concerning overbreadth of a state criminal statute in the context of the ACCA also apply to the career-offender context.

5

the extent it criminalizes a mere offer to sell drugs. We have yet to determine whether or in what circumstances state statutes that criminalize offers to sell constitute "controlled substance offenses" under the Guidelines. Increasingly, however, our sister Circuits have held state statutes expressly criminalizing a mere "offer" do not. *See, e.g.*, *United States v. Madkins*, 866 F.3d 1136, 1147 (10th Cir. 2017) (concluding Kansas law criminalized offers to sell and thus, swept beyond § 4B1.2(b)); *Hinkle*, 832 F.3d at 572 (noting government's concession that if Texas law covered mere offers, it would not come within the definition of "controlled substance offense" under § 4B1.2); *United States v. Savage*, 542 F.3d 959, 965–66 (2d Cir. 2008) (concluding Connecticut statute that reached fraudulent offers to sell criminalized more conduct than § 4B1.2(b)); *see also United States v. Redden*, 875 F.3d 374, 375 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1343 (2018) (granting *Anders* motion where it was clear that Illinois law did not criminalize offers to sell); *United States v. Bryant*, 571 F.3d 147, 158 (1st Cir. 2009) (concluding New York law that criminalized only bona fide offers, *i.e.*, offers that demonstrated an intent and ability to sell, did not sweep beyond § 4B1.2).

Assuming a state statute that criminalizes a mere offer to sell sweeps beyond U.S.S.G. § 4B1.2, we are not convinced the statute at issue here—§ 780-113(a)(30)—crosses that line. Section 780-113(a)(30) prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance . . . or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." It does not mention offers to sell drugs.

Glass argues, however, that a mere offer to sell drugs is impliedly included in § 780-113(a)(30) because Pennsylvania

law goes on to define "deliver" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance . . . ." 35 Pa. Cons. Stat. § 780-102(b). We disagree.

First, Glass omits that the federal counterpart to this statute, the Controlled Substances Act (CSA), also defines the "delivery" of a controlled substance to mean "the actual, constructive, or attempted transfer of a controlled substance," 21 U.S.C. § 802(8), and the Guidelines' application note too states that the term "controlled substance offense" applies not only to a statute that bars distribution of controlled substances, but also to "the offenses of aiding and abetting, conspiring, and *attempting to commit such offenses*." U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added). As Glass does not dispute that "attempt" under Pennsylvania law has the same meaning as "attempt" in the CSA and the Guidelines, his argument, if accepted, would prove self-defeating, for if § 780-102(b) sweeps in mere offers to sell, then by his logic, so does 21 U.S.C. § 802(8) and U.S.S.G. § 4B1.2, making the state offense broad, but no broader then the federal one.[3]

Second, we note that at least one other provision contained in § 780-113 expressly prohibits offers. *See* 35 Pa. Cons. Stat. § 780-113(a)(1) ("The manufacture, sale or

---

[3] In pointing out this flaw in the logic of Glass's argument, we are not suggesting that "attempted transfer" in 21 U.S.C. § 802(8) includes offers or solicitations other than those that meet the requirements for "attempt" under the CSA. Consistent with the Model Penal Code, federal "attempt" requires intent and a substantial step towards the commission of the crime. *See United States v. Cruz-Jiminez*, 977 F.2d 95, 101–03 (3d Cir. 1992); Model Penal Code § 5.01.

delivery, holding, *offering for sale*, or possession of any controlled substance . . . ." (emphasis added)). This language—*i.e.*, "offering for sale"—is conspicuously absent from § 780-113(a)(30). Obviously, the Pennsylvania legislature knew how to criminalize offers; it simply chose not to in § 780-113(a)(30).

Third, the parties have failed to uncover any authority, such as state judicial decisions or pattern jury instructions, suggesting Pennsylvania would prosecute a mere offer to sell under § 780-113(a)(30). *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ("[T]o find that a state statute creates a crime outside the generic definition . . . requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.").

And fourth, contrary to Glass's argument, we are not convinced Pennsylvania's definition of "deliver" is sufficiently similar to the Texas definition at issue in *Hinkle* and *Conley* such that a similar outcome is warranted. Under the Texas Health and Safety Code, "deliver" means: "to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship. *The term includes offering to sell a controlled substance*, counterfeit substance, or drug paraphernalia." Tex. Health & Safety Code Ann. § 481.002(8) (emphasis added). The Texas Code expressly reaches offers, whereas Pennsylvania's definition fails to include similar language. If anything, the Pennsylvania definition of "deliver" is more similar to the definition of "deliver" under Illinois law, which the Seventh Circuit concluded did not encompass offers to sell. *See Redden*, 875 F.3d at 375 ("The definition . . . tells us that 'deliver' and 'delivery' mean an 'actual, constructive or

8

attempted transfer' . . . . Any conduct meeting the state's definition of 'delivery' comes within § 4B1.2(b) because 'transfer' is just another word for distribute or dispense."). Accordingly, we are confident concluding that § 780-113(a)(30) is not broader than the Guidelines' definition of a "controlled substance offense."

We note that this conclusion is consistent with our prior holdings regarding § 730-113(a)(30) outside the U.S.S.G. § 4B1.1 context. We have already held that conviction under § 780-113(a)(30) for cocaine-based offenses is not overbroad in the context of the ACCA's definition of "serious drug offense." *See United States v. Abbott*, 748 F.3d 154, 160 (3d Cir. 2014). Additionally, we have held that conviction under § 780-113(a)(30) for a cocaine-based offense is "analogous to the federal felony of possession with intent to distribute . . . prohibited by [21 U.S.C.] § 841(a)(1) of the Controlled Substances Act," and is therefore an "aggravated felony" under the Immigration and Nationality Act. *Avila v. Attorney General*, 826 F.3d 662, 668 (3d Cir. 2016).

In sum, because § 780-113(a)(30) does not sweep more broadly than § 4B1.2, it is a "controlled substance offense" and may serve as a predicate offense to a career-offender enhancement under § 4B1.1. Because the record shows that Glass possessed two such predicate offenses—(1) a 2001 conviction, CP-22-CR-2630-2001, for manufacturing, delivering, or possessing marijuana in Dauphin County; and (2) a 2004 conviction, CP-31-CR-461-2004, for manufacturing, delivering, or possessing cocaine in

9

Huntingdon County—we find no error in the District Court's decision to apply the enhancement.[4]

## IV.

For the foregoing reasons, we will affirm the District Court's judgment entered on June 13, 2016.

---

[4] We recognize that the District Court based the enhancement on convictions CP-22-CR-2630-2001 and CP-31-CR-460-2004. Glass also argues that the latter conviction is not a "controlled substance offense" because it was for simple possession. We need not consider this argument because the record shows Glass possessed a third § 780-113(a)(30) conviction, CP-31-CR-461-2004, which qualifies as a predicate offense under today's decision. *See United States v. Blair*, 734 F.3d 218, 222 (3d Cir. 2013) (citing *United States v. Berrios*, 676 F.3d 118, 129 (3d Cir. 2012)).