**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4095

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PATRICK ANDREW GROVES,

Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:20-cr-00018-JPB-JPM-1)

Argued:  September 14, 2022                     Decided:  April 14, 2023

Before KING, AGEE, and THACKER, Circuit Judges.

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Agee and Judge Thacker joined.

**ARGUED:**  Jenny R. Thoma, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant.  Sarah Wagner, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee.  **ON BRIEF:**  Brendan S. Leary, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Wheeling, West Virginia, for Appellant.  William Ihlenfeld, United States Attorney, David J. Perri, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

KING, Circuit Judge:

Defendant Patrick Andrew Groves appeals from the sentence he received in the Northern District of West Virginia in February 2022 after pleading guilty to unlawfully possessing a firearm and ammunition, in contravention of 18 U.S.C. § 922(g)(1). Groves contends that the district court erred by treating a federal drug offense on which he was convicted in 2014 — aiding and abetting in the distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 — as being a "controlled substance offense" that increased his Sentencing Guidelines offense level. Groves has proffered two principal arguments as to why his 2014 offense is not a "controlled substance offense" under the Guidelines. First, he asserts that aiding and abetting in a drug offense cannot be treated as a "controlled substance offense" in Guidelines calculations. Second, Groves maintains that, in any event, each and every § 841(a)(1) distribution offense is disqualified from such treatment. As explained herein, we reject Groves's challenge to his sentence and affirm the criminal judgment entered by the district court.

I.

A grand jury in the Northern District of West Virginia returned a nine-count indictment in 2014 charging Groves and two codefendants with involvement earlier that year in a drug distribution ring in West Virginia and elsewhere. One of the four charges lodged against Groves in 2014 was that he had aided and abetted in a 21 U.S.C. § 841(a)(1) offense involving the distribution of cocaine base (the "2014 offense"). Section 841(a)(1) spells out the predominant federal drug distribution offense and provides, in pertinent part,

2

that "it shall be unlawful for any person knowingly or intentionally . . . to . . . distribute . . . a controlled substance."  In addition to § 841(a)(1), the charge against Groves was alleged and pursued under 18 U.S.C. § 2, a criminal code provision which is entitled "Principals" and reads as follows:

> (a)    Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b)    Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

*See* 18 U.S.C. § 2.[1]  Pursuant to a plea agreement, Groves pleaded guilty to the 2014 offense and was sentenced in February 2015 to three years of probation.

Being a convicted felon because of the 2014 offense, Groves was thereafter prohibited under federal law from possessing a firearm.  But while responding to a drug overdose incident in Wheeling in April 2020, law enforcement officers discovered a loaded firearm in Groves's possession.  Groves subsequently admitted to the authorities that the firearm was stolen.  In August 2020, another grand jury in the Northern District of West Virginia indicted him for unlawfully possessing a firearm and ammunition, in contravention of 18 U.S.C. § 922(g)(1).  Groves pleaded guilty to that offense in February 2021, but he reserved his right to appeal an adverse ruling on whether his 2014 offense qualifies as a "controlled substance offense" under the Sentencing Guidelines.

---

[1] The 2014 offense was also pursued under 21 U.S.C. § 841(b)(1)(C) (specifying penalties for Groves's § 841(a)(1) offense) and 21 U.S.C. § 860 (enhancing penalties because § 841(a)(1) offense was committed near school).

In the presentence investigation report (the "PSR") prepared in March 2021, the probation office treated Groves's 2014 offense as a "controlled substance offense" and thus recommended an offense level of 20 under the guideline applicable to a § 922(g)(1) offense. *See* USSG § 2K2.1(a)(4)(A) (assigning an offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense"). Otherwise, the offense level under that guideline would have been 14. *Id.* § 2K2.1(a)(6). Ultimately, Groves's PSR calculated an adjusted offense level of 19 and a criminal history category of II, resulting in an advisory Guidelines range of 33 to 41 months of imprisonment.[2]

Groves timely filed written objections to the PSR in April 2021, in which he contested the treatment of the 2014 offense as a "controlled substance offense" and asserted that his offense level under Guidelines section 2K2.1 should thus be 14, not 20. Groves emphasized that position and provided further support for it in a January 28, 2022 supplemental objection to the PSR, advising the district court of our January 7, 2022 decision in *United States v. Campbell*. *See* 22 F.4th 438, 440-49 (4th Cir. 2022) (concluding that prior conviction under West Virginia drug distribution statute that criminalizes attempt was improper predicate for Guidelines enhancement because attempt offense cannot be treated as "controlled substance offense" in Guidelines calculations).

---

[2] The PSR's adjusted offense level as to Groves included a two-level enhancement because the firearm was stolen. The PSR recommended a three-level reduction, however, for Groves's acceptance of responsibility by pleading guilty.

4

During the sentencing hearing conducted on February 1, 2022, the district court overruled Groves's objection with respect to the 2014 offense. The court then adopted the PSR's calculations and agreed with the government's recommendation that Groves receive a low-end Guidelines sentence, imposing a term of 33 months of imprisonment, followed by three years of supervised release. Groves has timely noted this appeal.

## II.

On appeal, Groves continues to maintain that his 2014 offense is not a "controlled substance offense" for purposes of the Sentencing Guidelines. He thereby presents a legal issue that we review de novo. *See United States v. Ward*, 972 F.3d 364, 368 (4th Cir. 2020). We address in turn Groves's two primary arguments in support of his position — first, that aiding and abetting in a drug offense cannot be treated as a "controlled substance offense" in Guidelines calculations and, second, that each and every 21 U.S.C. § 841(a)(1) distribution offense is also disqualified from such treatment.

## A.

We start with Groves's argument that aiding and abetting in a drug offense cannot constitute a "controlled substance offense" under the Guidelines. As explained above, in sentencing Groves on his 18 U.S.C. § 922(g)(1) offense, the district court imposed an offense level of 20 under Guidelines section 2K2.1 because Groves "committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a controlled substance offense." *See* USSG § 2K2.1(a)(4)(A). That guideline incorporates the definition of a "controlled substance offense" provided in Guidelines section 4B1.2(b), as

5

well as the commentary thereto. *Id.* § 2K2.1 cmt. n.1. Pursuant to Guidelines section 4B1.2(b), a "controlled substance offense" is defined as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.* § 4B1.2(b). The relevant commentary, set forth in Application Note 1 of Guidelines section 4B1.2(b), states that the definition of a "controlled substance offense" in that guideline "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* § 4B1.2 cmt. n.1.

In the decision highlighted by Groves, *United States v. Campbell*, our Court addressed whether Application Note 1 serves to expand Guidelines section 4B1.2(b)'s definition of a "controlled substance offense" to include an attempt to commit such an offense. *See* 22 F.4th 438, 441-49 (4th Cir. 2022). We concluded in *Campbell* that it cannot and thus does not. *Id.* In so ruling, we emphasized the "crucial" textual difference between Guidelines section 4B1.2(b) (which "does not mention attempt offenses") and Application Note 1 (which expressly does). *Id.* at 442, 444. Invoking Supreme Court precedent, we explained that the variance in wording renders Application Note 1 inconsistent with Guidelines section 4B1.2(b), thereby requiring us to adhere to the text of the guideline alone. *Id.* at 443-47 (relying on, inter alia, *Stinson v. United States*, 508 U.S. 36, 38 (1993), for the proposition that the "commentary to the Sentencing Guidelines 'is authoritative unless it . . . is inconsistent with, or a plainly erroneous reading of, that guideline'").

Groves relies on the fact that, like attempt, aiding and abetting is not mentioned in Guidelines section 4B1.2(b), but is expressly included in the commentary set forth in Application Note 1. As Groves would have it, *Campbell* dictates that the distinction in wording renders Application Note 1 inconsistent with Guidelines section 4B1.2(b), thereby requiring us to adhere to the text of the guideline.

For its part, the government counters that *Campbell*'s rationale "in relation to attempt offenses does not logically extend to aiding and abetting." *See* Br. of Appellee 4. According to the government, the *Campbell* analysis is inapposite because "an aider and abettor to a crime generally is punishable under federal law as a principal." *See United States v. Allen*, 909 F.3d 671, 675 (4th Cir. 2018). That is, aiding and abetting — unlike attempt — is "not a separate offense," but is rather "a theory of liability for a substantive offense." *See* Br. of Appellee 16-17. The government consequently asserts that — rather than seeking to expand Guidelines section 4B1.2(b) — the inclusion of aiding and abetting in Application Note 1 "mak[es] explicit what is already inherent in [Guidelines section] 4B1.2(b)." *Id.* at 18.

We readily agree with the government on the aiding and abetting issue. As our Court has consistently explained, aiding and abetting is a theory of criminal liability for an underlying substantive offense. That is because "[a]iding and abetting is not a standalone criminal offense," but rather "simply describes the way in which a defendant's conduct resulted in a violation of a particular [federal] law." *See United States v. Ali*, 991 F.3d 561, 573 (4th Cir.), *cert. denied*, 142 S. Ct. 486 (2021) (internal quotation marks omitted); *accord United States v. Barefoot*, 754 F.3d 226, 239 (4th Cir. 2014) (recognizing that

7

"[a]iding and abetting is not itself a federal offense, but merely describes the way in which a defendant's conduct resulted in the violation of a particular law"). Indeed, it has always been a "pervasive provision" of federal law — consistent with § 2 of Title 18 — "that aiders and abettors are principals." *See United States v. Cammorto*, 859 F.3d 311, 315 (4th Cir. 2017) (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185 (2007)).

Moreover, when viewed as a whole, the Sentencing Guidelines confirm that aiding and abetting in an offense should be treated just like the underlying substantive offense — and different from an attempt offense. In fact, "aiding and abetting" has its own guideline, providing — again, consistent with § 2 of Title 18 — that "[t]he offense level [for aiding and abetting] is the same level as that for the underlying offense." *See* USSG § 2X2.1. Meanwhile, an attempt offense is punished under the Guidelines as a lesser offense than the substantive offense to which it relates. *Id.* § 2X1.1(a).

Although it did not decide the issue, *Campbell* itself suggested that an offense prosecuted on an aiding and abetting theory can qualify as a "controlled substance offense." That suggestion arises from *Campbell*'s reference to our precedent that distinguishes aiding and abetting criminal liability from attempt offenses. *See* 22 F.4th at 442 n.2 (comparing *Allen*, 909 F.3d at 675 ("[T]he long-standing rule [is] that an aider and abettor to a crime generally is punishable under federal law as a principal."), with *United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003) ("An attempt to commit a crime . . . is recognized as a crime distinct from the crime intended by the attempt . . . .")).

Stated most succinctly, an offense prosecuted on an aiding and abetting theory can qualify as a "controlled substance offense" under Guidelines section 4B1.2(b), in that it is

the same as the underlying substantive offense.  Unlike the inclusion of attempt offenses addressed in *Campbell*, the inclusion of aiding and abetting in Application Note 1 was not an effort to improperly expand Guidelines section 4B1.2(b)'s definition of a "controlled substance offense."

B.

Having disposed of Groves's aiding and abetting contention in favor of the government, we turn to his argument that no 21 U.S.C. § 841(a)(1) distribution offense can constitute a "controlled substance offense" under Guidelines section 4B1.2(b).  According to Groves, that is so because § 841(a)(1) criminalizes an attempt offense, which our *Campbell* decision precludes from being treated as a "controlled substance offense" in Guidelines calculations.

1.

As we explained in *Campbell*, "[t]o determine whether a conviction under an asserted predicate offense statute . . . constitutes a 'controlled substance offense' as defined by the Sentencing Guidelines, we employ the categorical approach."  *See* 22 F.4th at 441 (citing *Ward*, 972 F.3d at 368).  The categorical approach requires us to "focus[] on the elements of the prior offense rather than the conduct underlying the conviction."  *See United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017) (emphasis and internal quotation marks omitted).  "If the 'least culpable' conduct criminalized by the predicate offense statute does not qualify as a 'controlled substance offense,' the prior conviction cannot support a [Guidelines] enhancement."  *See Campbell*, 22 F.4th at 441 (quoting *United States v. King*, 673 F.3d 274, 278 (4th Cir. 2012)).

9

In *Campbell*, we determined that the least culpable conduct criminalized by the predicate offense statute at issue — a West Virginia drug distribution statute — was "an attempt to deliver a controlled substance." *See* 22 F.4th at 442. That is, we interpreted the West Virginia statute to criminalize the attempt offense of attempted delivery. Consequently, we concluded that a conviction under the West Virginia statute was an invalid basis for a Guidelines enhancement, in that an attempt offense cannot constitute a "controlled substance offense" under Guidelines section 4B1.2(b). *Id.* at 442, 449.[3]

2.

As Groves would have it, the federal drug distribution statute relevant herein, 21 U.S.C. § 841(a)(1), similarly criminalizes the attempt offense of attempted delivery and thus a § 841(a)(1) conviction cannot support a Guidelines enhancement. In pertinent part, § 841(a)(1) makes it "unlawful for any person knowingly or intentionally . . . to . . . distribute . . . a controlled substance." *See* 21 U.S.C. § 841(a)(1). The term "distribute" means "to deliver (other than by administering or dispensing) a controlled substance." *Id.* § 802(11). And the term "deliver" is defined as the "actual, constructive, *or attempted* transfer of a controlled substance." *Id.* § 802(8) (emphasis added). In asserting that

---

[3] The Guidelines enhancement challenged in *Campbell* was a "career offender" designation pursuant to Guidelines section 4B1.1. *See* 22 F.4th at 440. That designation is imposed where, inter alia, a "defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." *See* USSG § 4B1.1(a). Like the guideline at issue in this appeal, Guidelines section 4B1.1 utilizes the definition of a "controlled substance offense" provided in Guidelines section 4B1.2(b).

§ 841(a)(1) criminalizes the attempt offense of attempted delivery, Groves equates an "attempted transfer" with an "attempted delivery."

Our Court has not heretofore decided whether — by incorporating a definition of "delivery" that includes "attempted transfer" — § 841(a)(1) criminalizes the attempt offense of attempted delivery. Three of our sister courts of appeals (the Third, the Sixth, and the Eleventh Circuits) have recently concluded, however, that an "attempted transfer" is not an "attempted delivery" under § 841(a)(1) and analogous state drug distribution statutes. *See United States v. Booker*, 994 F.3d 591, 595-96 (6th Cir. 2021) (interpreting § 841(a)(1)); *see also United States v. Penn*, No. 21-12420, __ F.4th __, 2023 WL 2623586, at *9 (11th Cir. Mar. 24, 2023) (§ 841(a)(1) and Florida statute); *United States v. Dawson*, 32 F.4th 254, 259 (3d Cir. 2021) (Pennsylvania statute); *United States v. Thomas*, 969 F.3d 583, 584-85 (6th Cir. 2020) (Michigan statute); *United States v. Garth*, 965 F.3d 493, 496-98 (6th Cir. 2020) (Tennessee statute). Those courts see an "attempted transfer" as "a *completed delivery* rather than an attempt crime." *See Booker*, 994 F.3d at 596 (internal quotation marks omitted); *see also Penn*, 2023 WL 2623586, at *9 (recognizing that "the attempted transfer of drugs constitutes a completed distribution offense"); *Dawson*, 32 F.4th at 259 (ruling that a "drug 'delivery' is a complete[d] offense, whether it is committed via actual or attempted transfer of drugs").

That view has been predicated on the fact that attempt offenses are criminalized separately from completed offenses under the relevant federal and state schemes. For example, federal law criminalizes attempt offenses with respect to controlled substances in 21 U.S.C. § 846. Section 846 provides, in pertinent part, that "[a]ny person who attempts

11

. . . to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt." *See* 21 U.S.C. § 846.  To avoid rendering § 846 superfluous, the Sixth Circuit has interpreted an "attempted transfer" under § 841(a)(1) to be a completed delivery and thus a completed distribution offense.  *See Booker*, 994 F.3d at 596 (explaining that "[w]e must 'construe statutes, where possible, so as to avoid rendering superfluous any parts thereof'" (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991)).

Additionally, the Sixth Circuit has underscored how utterly "remarkable" it would be to conclude "that § 841(a)(1) did not describe a 'controlled substance offense' under [Guidelines section] 4B1.2(b)."  *See Booker*, 994 F.3d at 596.  As that court explained, when Congress directed the Sentencing Commission to enact the guidelines related to career offenders — including the definition of "controlled substance offense" in Guidelines section 4B1.2(b) — it "specifically instructed that 'offense[s] described in . . . 21 U.S.C. [§ ]841' be covered."  *Id.* (alterations in original) (quoting 28 U.S.C. § 994(h)(1)(B), (2)(B)).  Consequently, to except § 841(a)(1) offenses from the Guidelines' definition of a "controlled substance offense" would be to "hold that the Sentencing Commission failed to comply with this statutory command."  *Id.*  Moreover, it would be to proclaim "that the primary federal statute criminalizing offenses related to controlled substances does not count as a 'controlled substance offense' under the Guidelines."  *Id.*

We agree with the Sixth Circuit that an "attempted transfer" is not an "attempted delivery" under § 841(a)(1), and that § 841(a)(1) therefore does not criminalize the attempt offense of attempted delivery.  That is because construing § 841(a)(1) to criminalize an

12

attempt offense would render § 846 superfluous.  It is also because such an interpretation would absurdly exclude § 841(a)(1) distribution offenses — quintessential federal drug trafficking crimes — from treatment as a "controlled substance offense" in Guidelines calculations.

3.

Groves nevertheless maintains that we are constrained by our *Campbell* decision to rule that 21 U.S.C. § 841(a)(1) criminalizes the attempt offense of attempted delivery. Groves's contention relies on the proposition that § 841(a)(1) is materially indistinguishable from the West Virginia drug distribution statute analyzed in *Campbell*. According to Groves, because we interpreted the West Virginia statute to criminalize attempted delivery, we must now construe § 841(a)(1) the exact same way.[4]

The West Virginia statute analyzed in *Campbell* "makes it 'unlawful for any person to . . . deliver . . . a controlled substance.'"  *See* 22 F.4th at 441-42 (emphasis omitted) (quoting W. Va. Code § 60A-4-401(a)).  And that West Virginia statute defines the term "deliver" as "'the actual, constructive *or attempted* transfer from one person to another of' controlled substances."  *Id.* at 442 (quoting W. Va. Code § 60A-1-101(h)).  Based on that

---

[4] Groves has also invoked two of our unpublished decisions, which relied on *Campbell* and interpreted similar state drug distribution statutes to criminalize attempted delivery. *See United States v. Jackson*, No. 22-4179, 2023 WL 2852624 (4th Cir. Apr. 10, 2023) (South Carolina statute); *United States v. Locklear*, No. 19-4443, 2022 WL 2764421 (4th Cir. July 15, 2022) (North Carolina statute).  Being unpublished, however, those decisions "do not constitute binding precedent in this Circuit."  *See Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 545 n.4 (4th Cir. 2019).

13

language, we deduced that "the least culpable conduct criminalized by the West Virginia statute is an attempt to deliver a controlled substance." *Id.*

To be sure, the language of the West Virginia drug distribution statute is similar to that of § 841(a)(1). The problem for Groves is that the West Virginia scheme — at least as it was presented in *Campbell* — does not criminalize attempt offenses separately from completed drug distribution offenses. That renders the West Virginia scheme materially different from the federal scheme, wherein completed drug distribution offenses are defined in § 841(a)(1) and attempt offenses in 21 U.S.C. § 846. Again, to construe § 841(a)(1) to criminalize an attempt offense would render § 846 wholly "superfluous." *See Booker*, 994 F.3d at 596 (internal quotation marks omitted). That was simply not a concern in *Campbell* with respect to the West Virginia drug distribution statute.

Notably, Groves asserts in this appeal that, under the West Virginia scheme, attempt offenses are actually criminalized separately (in West Virginia Code section 61-11-8) from completed drug distribution offenses. But that point cannot impact our interpretation of § 841(a)(1). Rather, that point may bear on the proper construction of the West Virginia drug distribution statute. Of course, even if *Campbell*'s reading of the West Virginia statute was somehow flawed, this panel has no power to overturn the *Campbell* panel's work. *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc) (explaining "the basic rule that one panel cannot overrule another"). Thus, we limit our focus today on § 841(a)(1). Put simply, we conclude that § 841(a)(1) does not criminalize the attempt offense of attempted delivery. As such, we rule that a § 841(a)(1) distribution

14

offense is not categorically disqualified from being treated as a "controlled substance offense" under Guidelines section 4B1.2(b).[5]

* * *

At bottom, we must reject each of Groves's two principal arguments as to why his 2014 offense — aiding and abetting in a 21 U.S.C. § 841(a)(1) drug distribution offense — is not a "controlled substance offense" under the Sentencing Guidelines. First, the Guidelines' definition of a "controlled substance offense" includes aiding and abetting in a drug offense. Second, although the Guidelines exclude attempt offenses, § 841(a)(1) does not criminalize attempt such that an § 841(a)(1) distribution offense would be categorically disqualified from being treated as a "controlled substance offense."[6]

---

[5] In defense of the *Campbell* decision, the government did not dispute in the *Campbell* proceedings that the West Virginia drug distribution statute criminalizes the attempt offense of attempted delivery. Moreover, the Sixth Circuit accepted a similar concession with respect to the comparable Tennessee drug distribution statute, *see United States v. Havis*, 927 F.3d 382, 385 (6th Cir. 2019) (en banc), before later recognizing that concession was erroneous, *see Garth*, 965 F.3d at 497.

[6] Groves also contends that the 2014 offense is not a "controlled substance offense" under the Guidelines in light of our decision in *United States v. Hope*, which was issued in March 2022 shortly after Groves's February 2022 sentencing. *See* 28 F.4th 487, 508 (4th Cir. 2022) (vacating defendant's sentence for lack of categorical match as to drug type between predicate South Carolina offenses and definition of "serious drug offense" under Armed Career Criminal Act). Because Groves raised this issue for the first time on appeal, his contention is subject to stringent plain error review. *See United States v. Dawson*, 587 F.3d 640, 645 (4th Cir. 2009) (recognizing that "plain error requires the existence of (1) an error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings"). Unfortunately for Groves, his *Hope* theory would require us to decide novel legal questions in his favor. Thus, we cannot say that any error was plain. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (specifying that, to be plain, error must be "clear under current law").

15

III.

Pursuant to the foregoing, we affirm the criminal judgment entered by the district court.

*AFFIRMED*