**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-4765**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

RASHUN RAFAEL SUNCAR, a/k/a Blackie,

Defendant – Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:23−cr−00039−JPB−JPM−1)

Argued:  December 10, 2024                                    Decided:  July 2, 2025

Before DIAZ, Chief Judge, and AGEE and RICHARDSON, Circuit Judges.

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion in which Judge Agee and Judge Richardson joined.

**ARGUED:**  Jenny R. Thoma, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant.  Carly Cordaro Nogay, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.  **ON BRIEF:** John A. Schwab, JOHN SCHWAB LAW, LLC, Pittsburgh, Pennsylvania, for Appellant. William Ihlenfeld, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

DIAZ, Chief Judge:

Rashun Suncar challenges the district court's decision to apply the career offender enhancement to his federal drug conviction. The court did so because Suncar had two prior Pennsylvania state convictions for delivery of a controlled substance, in violation of 35 Pa. Stat. and Cons. Stat. § 780-113(a)(30). Suncar maintains on appeal that section 780-113(a)(30) criminalizes (1) offers to sell drugs, and (2) the attempted transfer of drugs, both of which make Pennsylvania's statute categorically broader than the conduct criminalized under the then applicable federal sentencing guidelines.[1]

We disagree and affirm the judgment.[2]

---

[1] The Sentencing Commission later amended the guidelines to include "attempt[s] to commit" a "controlled substance offense" within the definition of a "controlled substance offense." U.S.S.G. § 4B1.2(d) (2023).

[2] In his reply brief, Suncar argues that the district court procedurally erred in two other ways and imposed a substantively unreasonable sentence. But Suncar forfeited these arguments by failing to raise them in his opening brief. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). In any event, Suncar conceded at oral argument that we couldn't reach his otherwise-forfeited arguments unless we agreed that the district court erred in imposing the career offender enhancement. *See* Oral Argument at 15:40–15:58, *United States v. Suncar*, No. 23-4765 (4th Cir. Dec. 10, 2024), http://www.ca4.uscourts.gov/OAarchive/mp3/23-4765-20241210.mp3. Because the district court correctly applied the enhancement, we don't consider Suncar's other arguments.

2

I.

Twice, Suncar sold a confidential informant oxycodone pills, some of which contained a detectable amount of fentanyl. Law enforcement then obtained a warrant to search Suncar's home, where they found crack cocaine, marijuana, and a pistol.

Suncar ultimately pleaded guilty to one count of distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Under his plea agreement, he reserved "the right to appeal an adverse sentencing determination on the issue of whether his prior felony drug convictions qualified as a 'controlled substance offense' as contemplated by U.S.S.G. § 4B1.2(b)." J.A. 10.

Suncar's two prior state drug convictions were for delivery of cocaine under 35 Pa. Stat. and Cons. Stat. § 780-113(a)(30). That statute prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance . . . or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 Pa. Stat. and Cons. Stat. § 780-113(a)(30). The statute, in turn, defines "delivery" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." *Id.* § 780-102(b).

A presentence report assigned Suncar a base offense level of twenty and applied a two-level enhancement for possession of a dangerous weapon. The report also applied the career offender enhancment, but reduced Suncar's offense level by three points for acceptance of responsibility, leaving him with a total offense level of 29. Without the

3

career offender enhancement, Suncar's guideline range was 46–57 months' imprisonment. With it, his applicable guidelines range jumped to 151–188 months' imprisonment.

Suncar challenged the career offender enhancement.  He argued (as he does here) that section 780-113(a)(30) criminalizes offers to sell and attempted transfers of drugs, while U.S.S.G. § 4B1.2(b) punished neither at the time of Suncar's conviction.  Because of those apparent discrepancies, Suncar contended that his Pennsylvania convictions weren't "controlled substance offenses" and couldn't serve as predicates for the career offender enhancement.

The district court disagreed.  It explained that the Third Circuit had previously held that the Pennyslvania statute "[was] in fact [an] appropriate predicate[] for [a] career offender finding" in *United States v. Dawson*, 32 F.4th 254 (3d Cir. 2022).  J.A. 158.  And because "[t]he Third Circuit obviously is the [c]ourt charged with interpreting those [Pennsylvania] statutes," the district court would "follow *Dawson* [until] told otherwise." J.A. 158.

The district court nonetheless imposed a sentence of 92 months' imprisonment, "well below the applicable sentence called for by the guidelines as a career offender."  J.A. 168–69.  The court also "note[d] that in the event the guideline determination made in this case [was] found to be incorrect, [it] would still impose a sentence identical to that imposed in this case."  J.A. 169.

This appeal followed.

4

II.

On appeal, Suncar argues that the district court erred by applying the career offender enhancement because the Pennsylvania delivery statute on which his predicate offenses rested is categorically overbroad. First, he asserts that "the least culpable conduct [section] 780-113(a)(3) criminalizes [is] offers to sell, which [is] categorically broader than the ordinary meaning of distribution [under the guidelines]." Appellant's Br. at 5. Second, Suncar contends that "Pennsylvania delivery also [criminalizes] attempted transfer[s]," which he claims are also "broader than the ordinary meaning of distribution [under the guidelines]." *Id.*

Whether a prior conviction qualifies as a "controlled substance offense" under the guidelines is a "legal issue that we review de novo." *United States v. Groves*, 65 F.4th 166, 169 (4th Cir. 2023).

A.

Before tackling Suncar's arguments, we provide some background on how we treat controlled substance offenses under the guidelines, including the categorical approach we use to determine whether a state law is a predicate for the career offender enhancement.

Under the guidelines, a sentencing court may apply the career offender enhancement if a defendant "has at least two prior felony convictions of . . . a controlled substance offense." *United States v. Davis*, 75 F.4th 428, 441 (4th Cir. 2023) (cleaned up). "As we['ve] explained . . . , to determine whether a conviction under an asserted predicate offense statute . . . constitutes a 'controlled substance offense' as defined by the Sentencing Guidelines, we employ the categorical approach." *Groves*, 65 F.4th at 171 (cleaned up).

5

That "approach requires us to focus on the elements of the prior offense rather than the conduct underlying the conviction." *Id.* (cleaned up). So, "[i]f the least culpable conduct criminalized by the predicate offense statute does not qualify as a 'controlled substance offense,' the prior conviction cannot support a Guidelines enhancement." *Id.* (cleaned up).

Section 4B1.2(b) of the guidelines defines a "controlled substance offense" as one that "prohibits the manufacture, import, export, *distribution*, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G § 4B1.2(b) (emphasis added).[3]

Now recall the Pennsylvania delivery statute. It prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance . . . or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 Pa. Stat. and Cons. Stat. § 780-113(a)(30). And the statute defines "delivery" as "the actual, constructive, or *attempted transfer* from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." *Id.* § 780-102(b) (emphasis added).

Our task is to compare the "distribution" term in the guidelines with Pennsylvania's "attempted transfer" (or under Suncar's interpretation, implied offer to sell) term to

---

[3] The parties don't dispute the definition of "distribution" under the guidelines. We have defined it by its "readily apparent meaning." *United States v. Ward*, 972 F.3d 364, 370–71 (4th Cir. 2020) (citing dictionary definitions of "distribution").

determine whether the least culpable conduct implicated by the Pennsylvania statute matches conduct criminalized under the guidelines.

B.

Suncar insists that the least culpable conduct that section 780-113(a)(30) criminalizes is an offer to sell, which is broader than "distribution" under the guidelines. The Pennsylvania statute, of course, says nothing about offers to sell, but Suncar asks us to read in that language based on a single non-precedential decision from a Pennsylvania court.

In *Commonwealth v. Walker*, No. 222-EDA-2021, 2021 WL 5314436, at \*6 (Pa. Super. Ct. Nov. 16, 2021), the Superior Court of Pennsylvania equated section 780-113(a)(30) with a New York drug statute by reading offers to sell into the former.[4] But, in so holding, the *Walker* court departed from the Third Circuit's decision in *United States v. Glass*, 904 F.3d 319 (3d Cir. 2018).

There, the Third Circuit held that section 780-113(a)(30) didn't impliedly include an offer to sell drugs, so the statute wasn't categorically overbroad in the controlled substance offense context. *Id.* at 324. Our sister circuit has since reiterated that holding in several cases. *See United States v. Hurtt*, 105 F.4th 520, 525 (3d Cir. 2024); *United States*

---

[4] The Superior Court of Pennsylvania is one of two intermediate appellate courts in the Commonwealth. *See The Superior Court of Pennsylvania*, The Unified Jud. Sys. of Pa., https://www.pacourts.us/courts/superior-court [https://perma.cc/S8LN-CJTM]. Its rules dictate that a non-precedential decision "can be cited only for its persuasive value." *United States v. Brown*, No. 23-2296, 2024 WL 2953127, at \*3 n.3 (3d Cir. June 12, 2024) (citing Pa. R. App. P. 126(b); Pa. Super. Ct. R. 64.37(b)).

7

*v. Magobet*, No. 23-2824, 2024 WL 3617296, at *3 (3d Cir. Aug. 1, 2024); *United States v. Brown*, No. 23-2296, 2024 WL 2953127, at *3 (3d Cir. June 12, 2024).

To be sure, "a federal court must follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." *United States v. Little*, 52 F.3d 495, 498 (4th Cir. 1995) (cleaned up). But where, as here, we think the Supreme Court of Pennsylvania would reach a different result under the plain language of the statute, we choose a different path. To explain why, we take a closer look at *Walker*.

To begin, the defendant in *Walker* argued that the trial court abused its discretion in calculating his "prior record score" because the court equated the defendant's prior New York drug conviction to a Pennsylvania drug conviction under section 780-113(a)(30).[5] *Walker*, 2021 WL 5314436, at *4–5. The defendant, relying on the Third Circuit's decision in *Glass*, sought to distinguish the two convictions because the New York statute expressly criminalized offers to sell while the Pennsylvania statute did not. *Id.* at *5.

The *Walker* court reviewed the trial court's finding "that the language of the Pennsylvania statute [was] similar to the language of the New York statute which specifically includes an offer to sell." *Id.* (cleaned up). The trial court had found the statutes sufficiently analogous because "an offer to sell" in the New York statute, was

---

[5] A defendant's prior record score captures his or her prior criminal history. *See Sentencing*, Pa. Comm'n on Sent'g, https://pcs.la.psu.edu/guidelines-statutes/sentencing [https://perma.cc/S5Z6-VNPS].

"substantial in nature to the attempted transfer from one person to another of a controlled substance as defined in the Pennsylvania statute." *Id.* (cleaned up).

The *Walker* court affirmed, concluding "that the trial court did not abuse its discretion" in equating the two statutes. *Id.* First, it noted that *Glass* was "not binding authority" on a "determination of the Superior Court." *Id.* Second, it explained that "*Glass* did not involve a comparison of New York's and Pennsylvania's drug statutes," but "assessed whether a conviction under section 780-113(a)(30) qualifies as a predicate offense triggering the career offender enhancement under U.S.S.G. § 4B1.1(a)." *Id.* The court thus found "that *Glass* [was] inapplicable to the issue at hand." *Id.*

Still, the *Walker* court added that it "would reject the conclusion in *Glass* that section 780-113(a)(1)'s use of the phrase 'offer for sale,' while that language [was] omitted from section 780-113(a)(30) and the definition of 'delivery,' indicates that the legislature did not intend for section 780-113(a)(30) to encompass an offer for sale." *Id.* at *6. The court did so in three sentences, without resort to any statutory interpretive tools or a review of how drug sale attempts are prosecuted in Pennsylvania. It merely concluded that the language in section 780-113(a)(1) "[left] open the possibility" that the legislature also intended to criminalize offers to sell in section 780-113(a)(30). *Id.*

Suncar would make a mountain out of *Walker*'s molehill, but that's wrong on two fronts.

For starters, the *Walker* court decided the case under a deferential abuse-of-discretion standard (unlike our de novo review) and qualified the decision as non-precedential. Then, in addressing *Glass*, the *Walker* court found that the Third Circuit's

9

analysis was "inapplicable" to the prior record score issue because *Glass* addressed whether a section 780-113(a)(30) conviction was a predicate for the career offender enhancement. Respectfully, we view *Walker*'s limited commentary on the merits of *Glass* as mere dicta.

Writing on a clean slate, we don't think that section 780-113(a)(30) criminalizes offers to sell drugs for the reasons our sister circuit explained in *Glass*. The *Glass* court noted, for example, that another provision of section 780-113 expressly criminalizes "offer[ing] [drugs] for sale"—language that was "conspicuously absent from [section] 780-113(a)(30)." 904 F.3d at 323. "Obviously," said the Third Circuit, "the Pennsylvania legislature knew how to criminalize offers; it simply chose not to in [section] 780-113(a)(30)." *Id.*

The *Glass* court likewise rejected the defendant's reliance on the definition of "deliver" under the Texas Health and Safety Code, which the Fifth Circuit recognized as including offers to sell. *Id.* (citing *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016)). But as the *Glass* panel explained, the Fifth Circuit did so because the Texas Code defined "deliver" to "*include[] offering to sell a controlled substance*." *Id.* (quoting Tex. Health & Safety Code Ann. § 481.002(8)). So *Glass* made the straightforward point that "[t]he Texas Code expressly reaches offers, whereas Pennsylvania's definition fails to include similar language." *Id.*

At bottom, Suncar doesn't explain why the Third Circuit erred in *Glass*. Instead, he relies solely on the fact that *Walker* rejected *Glass*. But in its drive-by critique of *Glass*, the *Walker* court did no more than "leav[e] open the possibility that the [Pennsylvania]

10

legislature intended section 780-113(a)(30) to criminalize an offer to sell a drug that [had] not been adulterated or misbranded," or that it meant to criminalize offers to sell within the phrase "attempted transfer." 2021 WL 5314436, at *6.

To the first point, we agree with *Glass* that the Pennsylvania legislature's choice to include offers to sell in one provision of section 780-113 and to exclude them in another must mean something. *Glass*, 904 F.3d at 323. After all, we "assume that the legislature used words that meant what it intended" and "that all words had a purpose and were meant to be read consistently." *Blakely v. Ward*, 738 F.3d 607, 611 (4th Cir. 2013) (cleaned up). Conversely, we won't read in text that appears to have been purposefully excluded.

Even more so when our sister circuits have found predicate offenses criminalizing offers to sell to be categorically overbroad based on express language in the respective criminal statutes. *See, e.g.*, *United States v. Palos*, 978 F.3d 373, 375 (6th Cir. 2020); *United States v. Cavazos*, 950 F.3d 329, 337 (6th Cir. 2020); *United States v. McKibbon*, 878 F.3d 967, 972 (10th Cir. 2017); *United States v. Madkins*, 866 F.3d 1136, 1145 (10th Cir. 2017); *Hinkle*, 832 F.3d at 572; *United States v. Savage*, 542 F.3d 959, 966 (2d Cir. 2008). Absent such express language here or authority from the state's highest court, we take the Pennsylvania legislature at its word.[6] *See United States v. Johnson*, 945 F.3d 174, 182 (4th Cir. 2019) (rejecting defendant's argument that Maryland possession with intent

---

[6] As the Third Circuit noted in later declining to follow *Walker*, the decision "has not been cited by any state or federal court since it was issued [in 2021]." *Brown*, 2024 WL 2953127, at *3 n.3.

11

to distribute statute included offers to sell because "such 'offer to sell' language [was] nowhere to be found in Maryland law").

To the *Walker* court's second point, we decline to collapse an "offer to sell" into an "attempted transfer," which is a separate crime and, under our precedent (as we discuss below), a completed delivery. All said, we reject Suncar's argument that section 780-113(a)(30) includes offers to sell.

## C.

We turn next to Suncar's argument that section 780-113(a)(30) is overbroad because it criminalizes attempted transfers. Suncar relies on our decision in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), to argue that the Pennsylvania delivery statute is "independently overbroad" because the least culpable conduct it criminalizes is an attempted transfer. Appellant's Br. at 11. In *Campbell*, we held that an attempt offense under a West Virginia statute was an inchoate crime that didn't constitute a "controlled substance offense" under the guidelines. 22 F.4th at 444.[7] Suncar says that "a straightforward application of *Campbell*" compels reversing the career offender enhancement here. Appellant's Br. at 12.

Suncar's contention highlights an "interesting dynamic" between *Campbell* and our later-decided precedent, beginning with *United States v. Groves*, 65 F.4th 166 (4th Cir.

---

[7] The question in *Campbell* was whether the guidelines commentary impermissibly expanded the guidelines text by including an attempt to commit an offense within the definition of a "controlled substance offense." *Campbell*, 22 F.4th at 441–49. Answering yes, we adhered to the guidelines text. *Id.* at 443–47.

2023). *United States v. Jackson*, 127 F.4th 448, 454 (4th Cir. 2025) (cleaned up). These later cases hold that even drug distribution statutes that are substantially like the one in *Campbell* are not categorically overbroad because an "attempted transfer" is a completed (rather than inchoate) offense. *Groves*, 65 F.4th at 172–73 (federal drug distribution statute); *see also United States v. Miller*, 75 F.4th 215, 229–31 (4th Cir. 2023) (North Carolina statute); *United States v. Davis*, 75 F.4th 428, 443 (4th Cir. 2023) (South Carolina statute).

In other words, the *Groves* court departed from *Campbell* because it didn't view an "attempted *transfer*" as an "attempted *delivery*" under federal or analogous state drug distribution statutes. *Groves*, 65 F.4th at 172 (citing cases) (emphases added). Instead, because under federal law the term "distribute" means "to deliver," and the term "to deliver" includes "actual, constructive, or *attempted* transfer[s]," an "attempted transfer" is an actual delivery, not an attempted one. *Id.*

We grounded this conclusion on superfluity principles: that "attempt offenses are criminalized separately from completed offenses under the relevant federal and state schemes." *Id.* If a court read the drug distribution provision as criminalizing attempt offenses when a separate provision already did so, it would render that separate provision superfluous. *See id.* at 173.

In deciding *Groves*, we cited the Third Circuit's decision in *United States v. Dawson*, which the district court relied on here. And, in fact, *Dawson* held that 35 Pa. Stat. and Cons. Stat. § 780-113(a)(30)—the statute under which Suncar was twice convicted— "is a *completed* offense," "not an inchoate crime." 32 F.4th at 259.

13

The *Dawson* court explained that Pennsylvania separately "prosecutes legal attempts to deliver drugs under the . . . general attempt provision . . . , rather than by charging a violation of [section] 780-113(a)(30) and then invoking [section] 780-102(b)'s 'attempted transfer' definition." *Id.* at 259–60. To then "interpret 'attempted transfer' as an embedded inchoate offense would mean holding that Pennsylvania has codified a redundant, vestigial crime—violating the canon against surplusage." *Id.* at 260.

We, of course, aren't bound by *Dawson*, but we are bound by *Groves* and its progeny. In *Miller* and *Davis*, we relied on *Groves* to hold that North Carolina's and South Carolina's drug distribution statutes—though like the West Virginia statute in *Campbell*—nonetheless qualified as "controlled substance offenses" under the guidelines. *Miller*, 75 F.4th at 230–31; *Davis*, 75 F.4th at 443. We distinguished those statutes from West Virginia's because "the [latter]—at least as it was presented in *Campbell*—does not criminalize attempt offenses separately from completed drug distribution offenses." *Davis*, 75 F.4th at 444–45 (quoting *Groves*, 65 F.4th at 174).[8]

But Pennsylvania *does* criminalize attempts separately, as do North Carolina and South Carolina. So this case resembles *Groves*, *Davis*, and *Miller* (as well as *Dawson*) more than *Campbell*.[9] Because Pennsylvania's statute is "materially distinguishable" from

---

[8] As we noted in *Groves*, "the government did not dispute in the *Campbell* proceedings that the West Virginia drug distribution statute criminalizes the attempt offense of attempted delivery." 65 F.4th at 174 n.5.

[9] We adhere to *Campbell*'s "core holding that an attempt offense cannot be a 'controlled substance offense,' as defined in Guidelines § 4B1.2(b)." *Jackson*, 127 F.4th at 455 (cleaned up). But because section 780-113(a)(30) doesn't criminalize attempt

14

West Virginia's, *Davis*, 75 F.4th at 445, and criminalizes only the completed offense of "attempted transfer," section 780–113(a)(30) isn't categorically overbroad as compared to the guidelines.

III.

For these reasons, the district court's judgment is

*AFFIRMED.*

---

offenses for the reasons explained in *Groves* and our later cases, *Campbell*'s holding is "distinguishable" from our holding today. *Id.*

15