**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-4582**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ROY COX, a/k/a Florida,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Richard E. Myers, II, Chief District Judge.  (7:23−cr−00113−M−KS−1)

Argued:  December 12, 2025                          Decided:  January 21, 2026

Before WILKINSON, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Richardson and Judge Quattlebaum joined.

**ARGUED:** Jennifer Claire Leisten, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Jake Pugh, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Daniel P. Bubar, Acting United States Attorney, David A. Bragdon, Assistant United States Attorney, Lucy Partain Brown, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

WILKINSON, Circuit Judge:

Defendant-Appellant Roy Cox challenges his sentence on the grounds that the district court miscalculated the underlying Guidelines range when it applied a career-offender enhancement. The government does not defend this miscalculation, and we hold that the district court indeed erred in applying the enhancement. However, this error was entirely harmless. The district court explicitly indicated that it would have imposed the same sentence regardless of Cox's status as a career offender. And we deem the sentence substantively reasonable given the district court's careful consideration of the relevant § 3553(a) factors. To reverse and remand would be an impermissible intrusion into the district court's primary role in criminal sentencing. *See Gall v. United States*, 552 U.S. 38, 51–52 (2007). We therefore affirm.

I.

In May 2023, Cox sold cocaine base, colloquially known as "crack" or "crack cocaine," a Schedule II controlled substance, on three occasions to a confidential informant working with local law enforcement. The amount sold totaled 65.85 grams. On June 4, 2023, officers applied for and executed an arrest warrant after discovering that Cox had failed to register as a sex offender, a mandatory consequence of one of his prior convictions. During the arrest, officers found 470.65 grams of cocaine, 811 grams of marijuana, and 9.9 grams of crack cocaine. J.A. 112–13.

2

Cox was later indicted on three counts of distributing cocaine base and one count of possession of cocaine with the intent to distribute. J.A. 9–10. On March 27, 2024, Cox pled guilty to all four counts without a plea agreement. J.A. 22, 29–31.

After the guilty plea, a probation officer prepared a Presentence Investigation Report ("PSR"), which detailed five of Cox's prior convictions: (1) a 2005 conviction for lewd or lascivious battery; (2) a 2009 conviction for trafficking in cocaine; (3) a 2014 conviction for possession of cocaine with intent to deliver or sell; (4) a 2014 conviction for failure to register as a sex offender; and (5) a 2022 conviction for possession of 20 grams or less of marijuana. J.A. 114–15.

The probation officer determined that the 2009 and 2014 convictions constituted controlled substances offenses which rendered Cox a "career offender" under the Guidelines. J.A. 113–15, 121. Relevant to this appeal, the 2009 conviction was for a violation of Fla. Stat. § 893.135(1)(b)(1), which penalizes "[a]ny person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of" between 28 grams and 150 kilograms of cocaine or cocaine mixtures.

The career-offender determination impacted both Cox's criminal history categorization and offense level under the guidelines. His criminal history category was elevated from Category V to Category VI, and his offense level was elevated from 26 to 32. J.A. 115, 120–21; *see also* U.S.S.G. § 4B1.1(b). Because Cox accepted responsibility, however, the probation officer decreased the offense level by three to 29. Based on this total offense level and the criminal history category of VI, the PSR recommended a

3

Guidelines range of 151–188 months' imprisonment. J.A. 121. Absent the career-offender enhancement, the Guidelines range would have been 84–105 months. J.A. 126.

At sentencing, the defense contended that the probation officer had miscalculated the Guidelines on the erroneous basis that Cox was a career offender. It claimed that because Fla. Stat. § 893.135(1)(b)(1) criminalized purchase and possession, the state law was not a "categorical fit" for a "controlled substance offense" under the Guidelines. Thus, Cox lacked the two predicate convictions necessary to qualify as a career offender. J.A. 50–53; *see also* U.S.S.G. § 4B1.1(a)(3). It therefore requested a sentence of 104 months imprisonment. J.A. 65. However, it caveated, "if the Court is concerned that a sentence between 84 and 105 months is inappropriate, the Court could sentence him in criminal history category VI, which would be 92 to 115 [months]." J.A. 79. The government sought a sentence of 151 months. J.A. 77.

The district court reached a "compromise" position, sentencing Cox instead to 120 months. J.A. 87. The court accepted the career-offender enhancement but explained that

> I'm going to vary downward, or in the alternative, upward, and land at 120 months. . . . In the event that I am wrong [about the career-offender enhancement], I believe the 84 to 105 understates the likelihood of recidivism, given this defender's [sic] personal history, and that the career offender guideline is intended to capture the increased likelihood of recidivism, and I would vary upward to the 120 to capture that.

*Id.* In so ruling, the district court discussed Cox's prior convictions and repeat offenses but also considered mitigating factors, including the death of his child and marital issues. These difficulties constituted at least part of the basis for the downward variance. J.A. 86, 89–90.

4

II.

A.

We review a district court's sentencing determinations "whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 41. But before we can proceed to analyze the substance of a sentence, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Id.* at 51.

Here, there can be little doubt that the probation officer and the district court erred in their Guidelines calculations. When determining whether a predicate conviction qualifies as a controlled substances offense for purposes of a career-offender enhancement, we employ the categorical approach. This analysis requires that the "least culpable conduct criminalized by the state statute" fall within the Guidelines' definition of a "controlled substances offense." *United States v. Miller*, 75 F.4th 215, 229 (4th Cir. 2023) (internal quotation marks omitted) (quoting *United States v. Campbell*, 22 F.4th 438, 441 (4th Cir. 2022)). We find no such match here. Nor does the government argue otherwise. *See* Resp. Br. at 9–10; Oral Arg. at 23:56.

Indeed, the Guidelines define "a controlled substances offense" as one involving the "manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b)(1). The Florida law that Cox violated, however, additionally criminalizes activities such as "possession" regardless of intent and

5

"purchase[.]" Fla. Stat. § 893.135(1)(b)(1). Moreover, we have held that intent cannot be imputed when a defendant possesses a quantity of cocaine that could also be attributable to personal use. *United States v. Brandon*, 247 F.3d 186, 194–95 (4th Cir. 2001). While there is no brightline rule for personal-use quantities, we held in *Brandon* that 35 grams of cocaine fell under this category. *Id.* The Florida law, however, targets quantities of 28 grams or higher, and therefore, by its very terms, penalizes possession and purchase of personal-use quantities. Fla. Stat. § 893.135(1)(b)(1). In this light, the least culpable conduct present in the Florida statute renders the law a categorical mismatch for the "controlled substance offense" definition at issue here. And thus Cox did not commit the two predicate offenses necessary for the career-offender enhancement.

B.

Not all errors are created equal, however, and a Guidelines miscalculation is not always reversible error. Indeed, the Supreme Court has been clear that the Guidelines are purely advisory in nature. *See United States v. Booker*, 543 U.S. 220, 259–60 (2005). District courts may deviate from the Guidelines as they deem necessary to advance notions of justice and public safety. Such significant discretion in sentencing comports with district courts' specialized expertise in this field and their intimacy with the facts surrounding each individual criminal defendant. *Gall*, 552 U.S. at 51–52. Therefore, we will not remand where (1) the same sentence is inevitable regardless of any Guidelines miscalculation and (2) the original sentence is substantively reasonable. *See, e.g.*, *United States v. Gomez-Jimenez*, 750 F.3d 370, 382–83 (4th Cir. 2014); *United States v. Savillon-Matute*, 636 F.3d

6

119, 124 (4th Cir. 2011). Such a scenario is the most fertile ground for harmless-error analysis and is the exact one we now confront.

The district court left no room for doubt as to what it would do upon any remand. *See* J.A. 87–88 ("So no matter who intends to appeal, I am varying out of the guideline . . . ."). Chief Judge Myers specifically declared that even if he incorrectly applied the career-offender enhancement, he would vary "in the alternative, upward" from Cox's proposed guideline range "and land at 120 months." J.A. 87. We take the district court's word at face value on this matter. *See United States v. Shatley*, 448 F.3d 264, 268 (4th Cir. 2006).

Thus, the only remaining question is whether the 120-month sentence is substantively reasonable. We hold that it is. While the district court was wrong to consider the 2009 conviction for the purposes of a career-offender enhancement, it could surely consider all of Cox's convictions when determining the likelihood of recidivism under § 3553(a). Indeed, it is the role of the district court to consider "the history and characteristics" of an individual defendant. 18 U.S.C. § 3553(a)(1). And for the purposes of an upward variance, the legal fiction of the categorical approach evaporates, and hypothetical "least culpable conduct" becomes irrelevant. The district court looks instead to the defendant's *actual* pattern of behavior, and, for this purpose, the line between possession and purchase on the one hand and distribution on the other blurs. The district court therefore appropriately considered the reality of Cox's circumstances: Cox was convicted in 2009 of "trafficking in cocaine," and in 2014 of "possession of cocaine with

7

an intent to deliver or sell," and he presently pled guilty to charges of distribution. J.A. 9–10, 115, 197 (citation modified).

The district court further determined that Cox had revolved in and out of the courts and prison without much change to his behavior, and that a 104-month sentence thus underestimated the risk of his future return to crime. *See* J.A. 90 ("[Y]ou sold cocaine, you got arrested. You did it again, you got arrested. And now you're back out there with half a kilogram between the crack and the powder."). This is fully consistent with the district court's mandate to "promote respect for the law," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)–(C).

The district court undertook this § 3553(a) analysis cautiously. The variance was only 15.4% higher than the defense's requested sentence of 104 months, and only 4.3% higher than the upper bound of the defense's alternative sentence recommendation, which ranged from 92 to 115 months. Questioning this variance would serve only to pick needlessly at the district court's well-reasoned judgment. Indeed, in terms of sheer percentages, the trial court's variance pales in comparison to those we have upheld in other cases. *See, e.g.*, *United States v. Spencer*, 848 F.3d 324, 327, 330 (4th Cir. 2017) (upholding as substantively reasonable an upward variance of 67%); *Savillon-Matute*, 636 F.3d at 124 (upholding as substantively reasonable an upward variance of 260%).

The variance here is the product of the district court's careful and explicit consideration of mitigating factors, including Cox's familial hardships. *See* J.A. 89 ("I understand the kinds of stresses that you're talking about with the loss of your child and

8

the loss of your marriage. I appreciate the difficulty that that could place one in."). Where the district court has considered the totality of Cox's circumstances, and has arrived at the most justified of variances, we are hard-pressed to find the sentence anything but reasonable. *See Gomez-Jimenez*, 750 F.3d at 383 (indicating that the case for substantive reasonableness is all the greater when the district court "carefully consider[s] each of the defendant's arguments" during its § 3553(a) analysis.).

It is inappropriate for an appellate court to second-guess such a rational determination. *See Concepcion v. United States*, 597 U.S. 481, 501 (2022) ("As a general matter, 'it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.'" (quoting *Solem v. Helm*, 463 U.S. 277, 290 n.16 (1983))). Taking the measure of the man is ultimately the district court's responsibility in sentencing. And this responsibility incorporates the decision of whether a variance is necessary in any given case. In *Gall*, the Supreme Court explained that "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." 552 U.S. at 51 (citation omitted). Appellate courts should not commandeer this role with unnecessary remands and rulings that detract from the district court's expertise and familiarity with individual criminal defendants. Indeed, harmless-error inquiry is essential to the maintenance of trial-court primacy in sentencing.

9

Given the district court's awareness of Cox's criminal history and its clear statements of intent in this case, we will not delay the preordained outcome. The error here was harmless, and we readily affirm.

*AFFIRMED*